# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# (WACO DIVISION)

| | |
|---|---|
| In re:<br><br>LITTLE RIVER HEALTHCARE HOLDINGS, LLC, *et al.*,[1]<br><br>Debtors,<br><br>ERNIE GLENN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LITTLE RIVER HEALTHCARE HOLDINGS, LLC, COMPASS POINTE HOLDINGS, LLC, TIMBERLANDS HEALTHCARE, LLC, KING'S DAUGHTERS PHARMACY, LLC, ROCKDALE BLACKHAWK, LLC, LITTLE RIVER HEALTHCARE - PHYSICIANS OF KING'S DAUGHTERS, LLC, CANTERA WAY VENTURES, LLC, AND LITTLE RIVER HEALTHCARE MANAGEMENT, LLC,<br><br>Defendants. | Bankr. Case No. 18-60526-RBK<br><br>Chapter 7<br>Jointly Administered<br><br><br>**ADVERSARY CLASS ACTION COMPLAINT**<br><br>Adv. Case No. _____ |

Plaintiff Ernie Glenn ("Plaintiff") alleges on behalf of himself and a class of similarly situated former employees of Little River Healthcare Holdings, LLC, Compass Pointe Holdings, LLC, Timberlands Healthcare, LLC, King's Daughters Pharmacy, LLC, Rockdale Blackhawk, LLC, Little River Healthcare - Physicians of King's Daughters, LLC, Cantera Way Ventures,

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Compass Pointe Holdings, LLC (1142), Timberlands Healthcare, LLC (1890), King's Daughters Pharmacy, LLC (7097), Rockdale Blackhawk, LLC (0791), Little River Healthcare - Physicians of King's Daughters, LLC (5264), Cantera Way Ventures, LLC (7815), and Little River Healthcare Management, LLC (6688). The Debtors' mailing address is 1700 Brazos Ave, Rockdale, TX 76567.

LLC, and Little River Healthcare Management, LLC (together, the "Debtors" or "Defendants"), as follows:

## NATURE OF THE ACTION

1. Plaintiff and the putative class members were terminated from their jobs on or about November 30, 2018.

2. Plaintiff brings this action on behalf of himself and the other similarly situated former employees who worked for Defendants and who were terminated without cause, as part of, or as the result of, mass layoffs or plant closings ordered by Defendants on or about November 30, 2018 and within thirty (30) days of that date, who were not provided 60 days advance written notice of their terminations by Defendants, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq*.

3. Plaintiff and all similarly situated employees seek to recover up to 60 days wages and benefits, pursuant to 29 U.S.C. § 2104 from Defendants, and for unpaid wages and benefits under the Texas Payday Act, Tex. Lab. Code. § 61.001, *et seq*.

4. Plaintiff's claims, as well as the claims of all similarly situated employees, are entitled to administrative priority status pursuant to the United States Bankruptcy Code § 503 (b)(1)(A) or, alternatively, wage priority status, under 11 U.S.C. § 507(a)(4) and (5).

5. Defendants were the employer (as that term is defined in the WARN Act) of Plaintiff and the similarly situated terminated employees during the relevant time period and were responsible for giving them notice pursuant to the WARN Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 157, 1331, 1334 and 1367 and 29 U.S.C. § 2104(a)(5).

2

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1409, 29 U.S.C. § 2104(a)(5).

## THE PARTIES

### *Plaintiff*

9. Plaintiff Ernie Glenn was employed by Defendants as a licensed vocational nurse and worked at the Defendants' facility located at 1700 Brazos Avenue, Rockdale, Texas 76567 (the "Rockdale Facility" or "Rockdale Hospital") until his termination of employment on or about November 30, 2018.

10. Plaintiff was terminated as part of mass layoffs and/or plant closings carried out by Defendants on or about November 30, 2018.

11. Plaintiff was terminated without cause.

12. Plaintiff did not receive 60 days' notice of his termination.

### *Defendants*

13. Defendants were each a corporation formed and existing under the laws of the state of Texas.

14. At all relevant times, Debtors have operated two rural hospitals – one at the Rockdale Facility and the other in Cameron, Texas (the "Cameron Facility" or "Cameron Hospital"). Additionally, Debtors operated over 10 imaging centers, surgery centers, physical rehabilitation centers, and physician practices (the "Facilities"), mostly in Central Texas, including: King Daughters' Clinic, Rockdale Family Care Clinic, Rockdale Downtown Medical Clinic, and Cameron Clinic, Temple Surgery Center, Temple Women's Center, Harker Heights

Women's Center, Killeen Spine Program, Timberlands Healthcare LLC, Georgetown Imaging, Killeen Clinic and Salado Medical Clinic.

15. On information and belief, at all relevant times, the ultimate parent of Debtors is Compass Pointe Holdings, LLC ("Compass Pointe"). Kevin Owens ("Mr. Owens"), a current equity holder of Compass Pointe, took over ownership of Rockdale Blackhawk, LLC ("Rockdale Blackhawk LLC") in about 2008. He foreclosed on his loan to Rockdale's prior parent, Blackhawk Healthcare, LLC, which resulted in Mr. Owens obtaining 100% of the equity of Rockdale Blackhawk LLC during the fourth quarter of 2010. Between 2010 and 2014, Mr. Owens syndicated ownership of the enterprise to several individuals.

16. On information and belief, after Compass Pointe obtained control of Debtors, Debtors formed relationships with urban and suburban specialist physicians, each of whom would visit the Rockdale Hospital one day per week to provide medical services. Rockdale Blackhawk LLC would pay each specialist physician a per diem rate in exchange for the medical services rendered by such physician. As Debtors' relationships with the specialist physicians strengthened, Debtors began to assume responsibility for the management of many such physicians' clinics. Debtors continued to grow by adding many physician clinics, diagnostic imaging centers, and surgery centers to its facilities from 2011 through 2014. During this time, Debtors formed Little River Healthcare – Central Texas, LLC ("LRHCT") as a subsidiary of Rockdale Blackhawk LLC. LRHCT acquired the operations of the Cameron Hospital in 2013. LRHCT also owned Temple Surgery Center, located in Temple, Texas. On April 2, 2018, LRHCT merged with Rockdale Blackhawk LLC, with Rockdale Blackhawk LLC being the surviving entity.

17. On information and belief, Debtor LRH Holdings has four wholly-owned Debtor subsidiaries (other than Rockdale Blackhawk LLC) and three wholly-owned non-Debtor subsidiaries:

    a. Debtor King's Daughters Pharmacy, which operates a retail pharmacy in Temple, Texas.

    b. Debtor LRH Management provides corporate services to the Debtors and is a party to management services agreements with Rockdale Blackhawk LLC. Such management services agreements obligate Rockdale Blackhawk LLC to pay a certain percentage of its net revenue to Debtor LRH Management in exchange for the management services; however, prior to the Petition Date, in actuality, Rockdale Blackhawk LLC funds the bi-weekly payroll for LRH Management instead of paying a percentage of net revenue.

18. Rockdale Blackhawk LLC has one wholly-owned Debtor subsidiary, LRH King's Daughters.

19. Compass Pointe serves as the ultimate parent entity of the Debtors through its 100 percent equity ownership of LRH Holdings. LRH Holdings, in turn, owns 100 percent of the equity of LRH Consulting, Timberlands, King's Daughters Pharmacy, Rockdale, Cantera Way, LRH Management, Quartz Mountain, and SyneSource Holdings. Rockdale, in turns, owns 100 percent of the equity of LRH King's Daughters and 51% of the equity of Meridian and Georgetown Sleep.

20. Debtors are all borrowers under a common Credit Agreement, dated March 31, 2015, with Monroe Capital Corporation and Monroe Capital Partners Fund LP as the lenders, and Monroe Capital Management Advisors, LLC as the administrative agent.

21. At all relevant times, Defendants comprised a business enterprise that together operated as a single employer.

22. Upon information and belief, in the period prior to the termination of its employees (including Plaintiff), Debtors had difficulty collecting from their third-party payors

5

and insufficient cash flow due to acquisitions of additional health care facilities and unsustainable debt service obligations.

23. On or about July 24, 2018, Defendants filed for Chapter 11 bankruptcy in this Court. (Bankr. Case No. 18-60526, ECF No. 1).

24. On or about November 30, 2018, Defendants' Chapter 11 bankruptcy proceeding was converted to Chapter 7. (Bankr. Case No. 18-60526, ECF No. 547).

25. On information and belief, at the time of the Chapter 11 filing, Defendants employed approximately 600 individuals at its Facilities, including a physician practice with 63 doctors.

26. Defendants, as a single employer, made the decision to terminate the employment of Plaintiff and the other similarly situated former employees who worked at the Facilities.

27. On or about November 30, 2018, Defendants informed their employees that they would be terminated.

28. Defendants did not provide Plaintiff or the similarly situated employees with 60 days' notice of their terminations.

## FEDERAL WARN CLASS ALLEGATIONS

29. Plaintiff brings the First Claim for Relief for violation of 29 U.S.C. § 2101 *et seq.*, individually and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or reported to one of Defendants' Facilities and were terminated without cause on or about November 30, 2018 and within 30 days of that date, or was terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by

6

Defendants on or about November 30, 2018 and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "WARN Class").

30. The persons in the WARN Class identified above ("WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, it is estimated at about 600 individuals. On information and belief, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

31. On information and belief, the identity of the members of the class and the recent residence address of each of the WARN Class Members is contained in Defendants' books and records.

32. On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member at the time of his/her termination is contained in the books and records of the Defendants.

33. Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following:

    (a)    whether the members of the WARN Class were employees of the Defendants who worked at or reported to Defendants' Facilities;

    (b)    whether Defendants, unlawfully terminated the employment of the members of the WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the WARN Act;

    (c)    whether Defendants' unlawfully failed to pay the WARN Class members 60 days wages and benefits as required by the WARN Act; and

    (d)    whether Defendants as a single employer violated the WARN Act.

34. Plaintiff's claims are typical of those of the WARN Class. Plaintiff, like other WARN Class members, worked at or reported to one of Defendants' Facilities and was

7

terminated without cause on or about November 30, 2018 due to the mass layoffs and/or plant closings ordered by Defendants.

35. At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a) and continued to operate as a business until they decided to order a mass layoffs or plant closings at the Facilities.

36. Defendants constituted a "single employer" of Plaintiff and the Class Members under the WARN Act in that, among other things:

(a) The Defendants shared common ownership;
(b) The Defendants shared common officers and directors;
(c) All of the Defendants exercised *de facto* control over the labor practices governing the Plaintiff and Class Members, including the decision to order the mass layoffs or plant closings at the Facilities;
(d) There was a unity of personnel policies emanating from a common source between Defendants; and
(e) There was a dependency of operations between Defendants.

37. Plaintiff will fairly and adequately protect the interests of the WARN Class. Plaintiff has retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation.

38. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act litigation, where individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

39. Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

40. Plaintiff intends to send notice to all members of the WARN Class to the extent required by Rule 23.

### First Cause of Action: Violation of the WARN Act, 29 U.S.C. § 2104

41. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

42. At all relevant times, Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

43. At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a) and continued to operate as a business until it decided to order a mass layoffs or plant closings at the Facilities.

44. At all relevant times, Plaintiff and the other similarly situated former employees were employees of Defendants as that term is defined by 29 U.S.C. §2101.

45. On or about November 30, 2018 the Defendants ordered mass layoffs or plant closings at the Facilities, as that term is defined by 29 U.S.C. § 2101(a)(2).

46. The mass layoffs or plant closings at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Defendants'

9

employees as well as thirty –three percent of Defendants' workforce at each Facility, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2101(a)(8).

47. Plaintiff and the Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendants at the Facilities.

48. Plaintiff and the Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 2101(a)(5).

49. Defendants were required by the WARN Act to give the Plaintiff and the Class Members at least 60 days advance written notice of their terminations.

50. Defendants failed to give Plaintiff and the Class members written notice that complied with the requirements of the WARN Act.

51. Plaintiff and each of the Class Members are, "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

52. Defendants failed to pay Plaintiff and each of the Class Members their respective wages, salary, commissions, bonuses, health and life insurance premiums, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to provide employee benefits including health insurance, for 60 days from and after the dates of their respective terminations.

53. Inasmuch as Plaintiff and each of the Class Members seek back-pay attributable to a period of time after the filing of the Defendants' bankruptcy petition and which arose as the result of the Defendants' violation of federal law, Plaintiff's and the Class Members' claims are entitled to first priority administrative expense status pursuant to 11 U.S.C. § 503(b)(1)(A), or

alternatively, priority treatment pursuant to 11 U.S.C. § 507(a)(4) or (5), and the remainder as a general unsecured claim.

### Second Cause of Action: Violation of Texas Payday Act

54. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

55. Tex.Lab.Code § 61.001, *et seq.*, known as the Texas Payday Act, requires Defendants to pay its employees all wages due within six (6) calendar days of an involuntary discharge. Tex.Lab.Code § 61.014.

56. The Texas Payday Act's definition of wages includes vacation pay, holiday pay, sick leave pay, parental leave pay, and severance pay. Tex.Lab.Code § 61.001(7)(B).

57. Plaintiff and the members of Class Members who were terminated from their employment by Defendants are entitled to unpaid compensation, but to date have not received such compensation.

58. Defendants did not pay Plaintiff and the Class Members their accrued paid time off prior to their termination.

59. Plaintiff and Class Members are owed the paid time off that they accrued prior to their terminations on or about November 30, 2018.

60. The relief sought in this proceeding is predominately equitable in nature.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief as against Defendants, jointly and severally:

A. Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and 29 U.S.C. § 2104(a)(5), Plaintiff and the other similarly situated former employees constitute a single class;

B. Designation of Plaintiff as Class Representative;

C. Appointment of the undersigned attorneys as Class Counsel;

D. A judgment in favor of Plaintiff and each of the "affected employees" equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, health and life insurance, and other ERISA benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(4);

E. A judgment in favor of Plaintiff and each of the "affected employees" for payment of accrued unpaid wages and vacation time, applicable liquidated damages and/or treble damages, and attorneys' fees and costs pursuant to the Texas Payday Act, Texas Labor Code, § 61.001, *et seq.*;

F. Interest as allowed by law on the amounts owed under the preceding paragraphs;

G. Treatment of all damage claims as first priority administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A), or alternatively priority status pursuant to 11 U.S.C. § 507(a)(4) or (5) and the remainder as a general unsecured claim;

H. Plaintiff's reasonable attorneys' fees and the costs and disbursements that the Plaintiff incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6);

I. An allowed administrative-expense priority claim under 11 U.S.C. § 503 for the reasonable attorneys' fees and the costs and disbursements that the Plaintiff incurs in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6); and

J. Such other and further relief as this Court may deem just and proper.

Dated: January 23, 2019

Respectfully submitted,

By: /s/ *Jeff P. Prostok*
Jeff P. Prostok
State Bar No. 16352500
Matthew G. Maben
State Bar No. 24037008
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
mmaben@forsheyprostok.com

*Local Counsel for Plaintiff and the putative Class*

-And-

Jack A. Raisner
René S. Roupinian
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000
Email: rsr@outtengolden.com
Email: jar@outtengolden.com

*Attorneys for Plaintiff and the putative Class*